# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES THOMAS ANDERSON,<br><br>Petitioner,<br><br>v.<br><br>NEIL MCDOWELL,<br><br>Respondent. | Case No. 1:17-cv-00836-SAB-HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO CLOSE CASE, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner, represented by counsel, proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner and Respondent have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Nos. 7, 8).

## I.

## BACKGROUND

On August 2, 2013, Petitioner was convicted after a jury trial in the Tuolumne County Superior Court of manufacturing a controlled substance and possession of methamphetamine for sale. (CT[1] 121–22). Petitioner admitted various prior conviction allegations and was sentenced to an imprisonment term of twenty-three years. (CT 59–60, 123). On February 29, 2016, the California Court of Appeal, Fifth Appellate District affirmed the judgment, but remanded the

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on September 14, 2017. (ECF No. 13).

matter to permit the trial court to address a custody credits issue. <u>People v. Anderson</u>, No. F068293, 2016 WL 778168, at *1 (Cal. Ct. App. Feb. 29, 2016). The California Supreme Court denied Petitioner's petition for review on May 11, 2016. (LDs[2] 10, 11).

Meanwhile, on August 21, 2015, Petitioner filed a state habeas petition in the California Court of Appeal, Fifth Appellate District, which denied the petition on April 21, 2016. (LDs 12, 15). The California Supreme Court denied Petitioner's petition for review on June 22, 2016. (LDs 16, 17).

On June 21, 2017, Petitioner filed the instant federal petition for writ of habeas corpus. (ECF No. 1). In the petition, Petitioner raises the following claims for relief: (1) the prosecutor's improper comment on Petitioner's exercise of his right not to testify; (2) the trial court erroneously permitting the prosecutor to argue a lower burden of proof for a guilty verdict; (3) ineffective assistance of counsel; and (4) cumulative error. Respondent has filed an answer, and Petitioner has filed a traverse. (ECF Nos. 12, 21).

## II.

## STATEMENT OF FACTS[3]

Tuolumne County Sheriff's Detective Victor Serrano, Jr., testified that, during a search of a house owned by Anderson, he found 97 grams of methamphetamine, a digital scale, $60 in $1 bills, and two $20 bills, all of which he found indicative of sale of methamphetamine. Although Anderson was not home at the time of the search, the items were found in a bedroom apparently occupied by Anderson. Anderson's wallet containing his driver's license was found in the bedroom. It appeared someone had slept in the bed. In the kitchen of the residence Serrano found a glass jar with methamphetamine residue in it, as well as a can of denatured alcohol. These items were indicative of a chemical process used to either clean "dirty" methamphetamine or to recrystalize diluted or "cut" methamphetamine. In both situations, the process was used to increase the value of the methamphetamine.

Five individuals were inside the house when entry was made by police officers, although Anderson was not present. Serrano recognized three of the five individuals—Sarah Geisdorff, Eric Bailey, and Richard Garris. The record established that Glenna Hunter also was at the residence. At least three of the individuals had a significant drug history.

Serrano also noticed there were two video surveillance cameras on the property, both pointing toward the driveway and down to the road. A television monitor for

[2] "LD" refers to the documents lodged by Respondent on September 14, 2017. (ECF No. 13).
[3] The Court relies on the California Court of Appeal's February 29, 2016 opinion for this summary of the facts of the crime. <u>See</u> <u>Vasquez v. Kirkland</u>, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

the cameras was found inside the bedroom apparently occupied by Anderson. If someone had been in the bedroom, he or she would have seen the officers approach the house on the monitor.

Small bags of methamphetamine were found in a second bedroom that was occupied by Lotty Bailey.

Criminalist Berkley Akutagawa confirmed the weight of the substance found in Anderson's bedroom and that the substance confiscated contained methamphetamine. She also confirmed the jar contained 3.24 grams of methamphetamine.

Hunter testified she was at the house with her stepdaughter, Geisdorff (also referred to as Sarah Jo Foster), to do laundry. They had been there only a few minutes before the police arrived. No one was home when Hunter and Geisdorff arrived at the house. Hunter did not enter Anderson's bedroom. Another man arrived at the house before the police arrived.

Garris confirmed he arrived at the house with an individual identified only as "Matt," shortly before the police arrived. Garris also admitted he used to be a heroin addict.

Defense counsel called Amber Turner who testified Anderson had been staying with her at her home for a few days before and after the police searched his home. Anderson was with Turner when he received a phone call informing him the police were searching his house.

The prosecutor argued that the only reasonable inference from the undisputed facts was that Anderson possessed the methamphetamine for sale, and he was manufacturing methamphetamine within the meaning of the statute. Defense counsel admitted the house belonged to Anderson and the methamphetamine was found in his bedroom. Defense counsel argued, however, that Anderson was not in possession of the methamphetamine, pointing out Anderson was not present at the house for several days, and five individuals, all known to be drug users, were present when the police arrived. The only reasonable inference from these facts, according to defense counsel, was that one of those individuals brought the methamphetamine to the house to sell to the other individuals, and when the police arrived they hid the methamphetamine in Anderson's bedroom.

Anderson, 2016 WL 778168, at *1–2.

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged convictions arise out of the Tuolumne County Superior

3

1    Court, which is located within the Eastern District of California. 28 U.S.C. § 2241(d).

2    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

3    of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

4    enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th

5    Cir. 1997) (en banc). The instant petition was filed after the enactment of the AEDPA and is

6    therefore governed by its provisions.

7    Under the AEDPA, relitigation of any claim adjudicated on the merits in state court is

8    barred unless a petitioner can show that the state court's adjudication of his claim:

9
            (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
10          determined by the Supreme Court of the United States; or

11          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
12          State court proceeding.

13   28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Lockyer v. Andrade, 538

14   U.S. 63, 70–71 (2003); Williams, 529 U.S. at 413.

15   As a threshold matter, this Court must "first decide what constitutes 'clearly established

16   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71

17   (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this

18   Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

19   of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "In other words,

20   'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles

21   set forth by the Supreme Court at the time the state court renders its decision." Id. In addition,

22   the Supreme Court decision must "'squarely address [] the issue in th[e] case' or establish a legal

23   principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in

24   . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of

25   review under AEDPA. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009) (quoting Wright v.

26   Van Patten, 552 U.S. 120, 125 (2008)); Panetti v. Quarterman, 551 U.S. 930 (2007); Carey v.

27   Musladin, 549 U.S. 70 (2006). If no clearly established Federal law exists, the inquiry is at an

28   end and the Court must defer to the state court's decision. Musladin, 549 U.S. 70; Wright, 552

U.S. at 126; <u>Moses</u>, 555 F.3d at 760.

If the Court determines there is governing clearly established Federal law, the Court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." <u>Lockyer</u>, 538 U.S. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 412–13; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72. "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" <u>Williams</u>, 529 U.S. at 405 (quoting Webster's Third New International Dictionary 495 (1976)). "A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." <u>Id.</u> If the state court decision is "contrary to" clearly established Supreme Court precedent, the state decision is reviewed under the pre-AEDPA de novo standard. <u>Frantz v. Hazey</u>, 533 F.3d 724, 735 (9th Cir. 2008) (en banc).

"Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 411; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 75–76. The writ may issue only "where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." <u>Richter</u>, 562 U.S. at 102. In other words, so long as fair minded jurists could disagree on the correctness of the state court's decision, the decision cannot be considered unreasonable. <u>Id.</u> If the Court determines that the state court decision is objectively unreasonable, and the error is not structural, habeas relief is nonetheless unavailable unless the error had a substantial and injurious effect on the verdict. <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. <u>Edwards v. Lamarque</u>, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Richter</u>, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." <u>Id.</u> at 99–100 (citing <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991)).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). <u>Stanley</u>, 633 F.3d at 860; <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes</u>, 336 F.3d at 853. While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 102.

## IV.

## DISCUSSION

### A. **<u>Griffin</u> Error**

In his first claim for relief, Petitioner asserts that the state court erred in concluding that the prosecutor did not commit a <u>Griffin</u> error by commenting on Petitioner's exercise of his right

not to testify, in violation of Petitioner's Fifth and Fourteenth Amendment rights. (ECF No. 1 at 9, 13).[4] Respondent argues that Petitioner's <u>Griffin</u> error claim is procedurally barred and that the state court's alternate rejection of the claim on the merits was reasonable. (ECF No. 12 at 19).

This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Brumfield v. Cain</u>, 135 S. Ct. 2269, 2276 (2015); <u>Johnson v. Williams</u>, 568 U.S. 289, 297 n.1 (2013); <u>Ylst</u>, 501 U.S. at 806.

In denying the <u>Griffin</u> claim, the California Court of Appeal stated:

> Second, Anderson asserts the prosecutor committed *Griffin* error during closing argument. "In *Griffin v. California* (1965) 380 U.S. 609, the United States Supreme Court held that the prosecution may not comment upon a defendant's failure to testify in his or her own behalf. Its holding does not, however, extend to bar prosecution comments based upon the state of the evidence or upon the failure of the defense to introduce material evidence or to call anticipated witnesses. [Citations.] Nonetheless, as defendant observes, we have held that a prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339.)

> Defense counsel asserted in closing argument that Anderson was not at the house when the police arrived. He also asserted that perhaps the surveillance system set up by Anderson would have helped determine who was at the house and when they arrived. "Nobody bothered, apparently, to look at this T.V. I don't know if maybe that T.V. would have shown. It shows people coming and going, as well as police or sheriff's deputies. It would also show, apparently, these people when they arrived, and that would have been a very interesting thing to look at, you know, if they had the evidence."

> The prosecutor responded to this argument in his rebuttal argument. "Now, another problem for [defense counsel]. The cops didn't look at the T.V. to see if there was a recording that could have helped his client. *Well, there is one person on the face of this planet that knows that system,* so I'm sure [defense counsel], if he wanted to, he could have checked to see if there was a tape there. Maybe the thing doesn't record. Maybe it is just a camera hooked up to a T.V. Don't know. But he certainly would have been in the best position to go, 'Hey, there is a tape there. Let me look at the tape.' " (Italics added.)

> Anderson asserts it "is reasonably likely that the jury would have interpreted [the italicized remark] as a comment on the defendant's failure to take the stand and testify in his own defense." We disagree.

---

[4] Page numbers refer to ECF page numbers stamped at the top of the page.

Considering the prosecutor's comment in its entirety, the only reasonable interpretation is that defense counsel (who placed the existence of technological evidence in issue during his argument), had the best access to the video system and the person with knowledge of how the system worked. Accordingly, if the video system recorded events of the day of the search, and those events were important to the defense, defense counsel could/would have obtained the tape and introduced it (or evidence of the technology's capability) into evidence. The prosecutor's argument was a comment on the state of the evidence coupled with the defense's failure to introduce evidence counsel had brought up during argument—evidence counsel had equal or better access to. *Griffin* does not extend to "to comments on the state of the evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses." (*People v. Valdez* (2004) 32 Cal.4th 73, 127.) As the prosecutor's comment was not about defendant's failure to testify, no *Griffin* error occurred.

However, even were we to assume in the abstract that the prosecutor's comment constituted a hyper-technical violation of *Griffin,* appellant's failure to object during the prosecutor's argument constitutes waiver. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1006.) A defendant cannot complain on appeal of error by a prosecutor unless he or she made an assignment of error on the same ground in a timely fashion in the trial court and requested the jury be admonished to disregard the impropriety. (*Ibid.*)

Finally, were we to ignore the waiver/forfeiture issue, appellant suffered no prejudice. Any Griffin error, assuming it occurred in this case, was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.)

Anderson, 2016 WL 778168, at *6–7.

1. Procedural Default

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729–30 (1991). This doctrine of procedural default is based on the concerns of comity and federalism. Id. at 730–32. However, there are limitations as to when a federal court should invoke procedural default and refuse to review a claim because a petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263 (1989).

Here, the California Court of Appeal found, *inter alia*, that Petitioner forfeited his Griffin claim by failing to object during the prosecutor's argument. This is known as the contemporaneous objection rule. Procedural default is appropriate if the contemporaneous objection rule is independent and adequate. However, a petitioner "may obtain federal review of

a defaulted claim by showing cause for the default and prejudice from a violation of federal law." Martinez v. Ryan, 566 U.S. 1, 10 (2012) (citing Coleman, 501 U.S. at 750). Attorney error constituting ineffective assistance of counsel provides "cause" to excuse procedural default. Coleman, 501 U.S. at 754. A claim of ineffective assistance generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 489 (1986). Here, Petitioner presented an independent ineffective assistance claim regarding counsel's failure to object to the alleged Griffin error.

The Court does not give AEDPA deference to the state court's determination on the ineffective assistance of counsel claim when deciding whether it constitutes cause for procedural default. Visciotti v. Martel, 862 F.3d 749, 769 (9th Cir. 2017), petition for cert. filed on other grounds sub. nom. Visciotti v. Davis, No. 17-6937 (U.S. Nov. 29, 2017). Therefore, the Court applies different standards when reviewing ineffective assistance of counsel "as a substantive basis of relief and as cause to avoid default of other claims." Visciotti, 862 F.3d at 769 (internal quotation mark omitted) (quoting Fischetti v. Johnson, 384 F.3d 140, 154 (3d Cir. 2004)). Ordinarily procedural bar issues are resolved first, but courts have recognized that "[p]rocedural bar issues are not infrequently more complex than the merits issues . . . so it may well make sense in some instances to proceed to the merits if the result will be the same." Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997)).

Accordingly, the Court will proceed to review Petitioner's Griffin claim on the merits applying AEDPA deference. See Apelt v. Ryan, 878 F.3d 800, 825 (9th Cir. 2017) ("[W]hen a state court 'double-barrels' its decision—holding that a claim was procedurally barred and denying the claim on its merits—both its procedural default ruling and its merits ruling are entitled to deferential review by federal courts, as intended by AEDPA.").

2. Merits Analysis

In Griffin v. California, 380 U.S. 609 (1965), the Supreme Court held that the Fifth Amendment prohibits a prosecutor or judge from commenting on a defendant's failure to testify. A direct comment regarding a defendant's failure to testify always violates Griffin. Hovey v.

1   Ayers, 458 F.3d 892, 912 (9th Cir. 2006). On the other hand, an indirect comment violates

2   Griffin only "if it is manifestly intended to call attention to the defendant's failure to testify, or is

3   of such a character that the jury would naturally and necessarily take it to be a comment on the

4   failure to testify." Hovey, 458 F.3d at 912 (internal quotation marks omitted) (quoting Lincoln v.

5   Sunn, 807 F.2d 805, 809 (9th Cir. 1987)).

6          Here, the prosecutor did not comment directly on Petitioner's failure to testify. The state

7   court's conclusion that the prosecutor's comment was not manifestly intended to call attention to

8   Petitioner's decision not to testify and was not of such a character that the jury would naturally

9   and necessarily take it to be a comment on Petitioner's decision not to testify was reasonable. In

10  context, the prosecutor's comment (1) called attention to the state of the evidence (i.e., the fact

11  that neither a recording from the surveillance system nor evidence of the system's recording

12  capability was introduced into evidence), and (2) was made in response to defense counsel, who

13  first placed the existence of the surveillance system evidence in issue during his argument, had

14  access to both the surveillance system and the person most familiar with said system, and could

15  have introduced any relevant recording or evidence regarding the system's recording capability.

16  The state court's determination that there was no Griffin error was not objectively unreasonable.

17         The California Court of Appeal also found that even assuming a hyper-technical violation

18  of Griffin, any error was harmless beyond a reasonable doubt under Chapman v. California, 386

19  U.S. 18 (1967). Anderson, 2016 WL 778168, at *7. In the instant case, the trial court instructed

20  the jury: "A defendant has an absolute constitutional right not to testify. . . . Do not consider, for

21  any reason at all, the fact that the defendant did not testify. Do not discuss that fact during your

22  deliberations or let it influence your decision in any way." (CT 93; 2 RT[5] 365). The trial court

23  also gave instructions regarding the presumption of innocence, the prosecution's burden of proof,

24  that "[n]othing that the attorneys say is evidence," that the jurors were to decide the facts based

25  only on evidence that was presented in court, and that "[n]either side is required to call all

26  witnesses who may have information about the case or to produce all physical evidence that

27  might be relevant." (CT 80, 81, 88; 2 RT 354–55, 362). A jury is presumed to follow the court's

28  _____
    [5] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on September 14, 2017. (ECF No. 13).

instructions. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000) (citing <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987)). Accordingly, the California Court of Appeal's harmless error determination was not unreasonable. <u>See</u> <u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2199 (2015) (quoting <u>Fry v. Pliler</u>, 551 U.S. 112, 119 (2007)) (When a state court's "<u>Chapman</u> decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'").

Based on the foregoing, the Court finds that the state court's denial of the <u>Griffin</u> error claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable finding of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first claim.

## B. Prosecutorial Misconduct

In his second claim for relief, Petitioner asserts that the prosecutor violated his Fifth and Fourteenth Amendment right to have all elements of the charged offenses proved beyond a reasonable doubt when the prosecutor argued that the jury merely needed to find that the prosecution's case was reasonable in order to convict. (ECF No. 1 at 9–10, 17). Respondent argues that to the extent Petitioner states a federal due process claim, the state court's rejection of that claim was reasonable. (ECF No. 12 at 26).

This claim was raised on direct appeal to the California Court of Appeal, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. <u>See</u> <u>Brumfield</u>, 135 S. Ct. at 2276; <u>Ylst</u>, 501 U.S. at 806.

In denying Petitioner's prosecutorial misconduct claim with respect to the prosecutor allegedly arguing a lower burden of proof, the California Court of Appeal stated:

> Anderson asserts the prosecutor argued to the jury that if his theory was reasonable, he had met his burden of proving Anderson guilty beyond a reasonable doubt. Anderson cites *People v. Centeno* (2014) 60 Cal.4th 659

(*Centeno* ) to support his argument.

The first issue in *Centeno* was the prosecutor's use of a visual aid unrelated to the facts of the case in an attempt to explain the concept of *beyond a reasonable doubt.* The visual aid was a recognizable diagram of the State of California with errors in the location and names of some cities. The prosecutor argued the diagram pictured the state of California, despite the errors, suggesting, in essence, that proof beyond a reasonable doubt could be established even if there were errors or inconsistences in the evidence. The Supreme Court first noted it had repeatedly discouraged the use of such aids by prosecutors and courts (*Centeno, supra,* 60 Cal.4th at p. 667) and then concluded, "The use of an iconic image like the shape of California or the Statue of Liberty, unrelated to the facts of the case, is a flawed way to demonstrate the process of proving guilt beyond a reasonable doubt. These types of images necessarily draw on the jurors' own knowledge rather than evidence presented at trial. They are immediately recognizable and irrefutable. Additionally, such demonstrations trivialize the deliberative process, essentially turning it into a game that encourages the jurors to guess or jump to a conclusion." (*Id.* at p. 669.)

Anderson's argument in this case, however, is based on the second error in the prosecutor's argument identified by the Supreme Court, which risked misleading the jury about the applicable standard of proof. In order to understand this issue fully, we will quote at length the Supreme Court's decision.

"The prosecutor told the jury that in reaching its decision it must reject impossible and unreasonable inferences, and only consider reasonable possibilities. She stated that 'your decision has to be in the middle. It has to be based on reason. It has to be a reasonable account.... [Y]ou need to look at the entire picture, not one piece of evidence, not one witness ... to determine if the case has been proven beyond a reasonable doubt.'

"She then asked the jury to consider the following: 'Is it reasonable to believe that a shy, scared child who can't even name the body parts made up an embarrassing, humiliating sexual abuse, came and testified to this in a room full of strangers *or the defendant abused Jane Doe. That is what is reasonable, that he abused her.* [¶] Is it reasonable to believe that Jane Doe is lying to set-up the defendant for no reason or is the defendant guilty?' (Italics added.) She continued: 'Is it reasonable to believe that there is an innocent explanation for a grown man laying on a seven year old? No, that is not reasonable. Is it reasonable to believe that there is an innocent explanation for the defendant having his penis out of his pants when he's on top of a seven-year-old child? No, that is not reasonable. Is it reasonable to believe that the defendant is being set-up in what is really a very unsophisticated conspiracy led by an officer who has never met the defendant *or he[*'s] good for it? That is what is reasonable. He's good for it.*' (Italics added.)

"We observe at the outset that many parts of the prosecutor's argument were unobjectionable. It is permissible to argue that the jury may reject impossible or unreasonable interpretations of the evidence and to so characterize a defense theory. [Citation.] It is permissible to urge that a jury may be convinced beyond a reasonable doubt even in the face of conflicting, incomplete, or partially inaccurate accounts. [Citation.] It is certainly proper to urge that the jury consider all the evidence before it. [Citations.]

"Here, the prosecutor's argument began with what the jury could consider: reasonably possible interpretations to be drawn from the evidence. While this is

an acceptable explanation of the jury's starting point, it is only the beginning. Setting aside the incredible and unreasonable, the jury evaluates the evidence it deems worthy of consideration. It determines just what that evidence establishes and how much confidence it has in that determination. The standard of proof is a measure of the jury's level of confidence. It is not sufficient that the jury simply believe that a conclusion is reasonable. It must be convinced that all necessary facts have been proven beyond a reasonable doubt. [Citation.] The prosecutor, however, left the jury with the impression that so long as her interpretation of the evidence was reasonable, the People had met their burden. The failure of the prosecutor's reasoning is manifest.

"Section 1096, codifying the standard of proof, expressly provides that a 'reasonable' doubt is not a mere ' "possible" ' or ' "imaginary" ' doubt. In *People v. Romero* (2008) 44 Cal.4th 386 (*Romero*), we approved the prosecutor's argument that the jury must ' "decide what is reasonable to believe versus unreasonable to believe" and to "accept the reasonable and reject the unreasonable." ' [Citation.] We concluded that '[n]othing in [that] explanation lessened the prosecution's burden of proof. The prosecution must prove the case beyond a reasonable doubt, not beyond an unreasonable doubt.' [Citation.]

"Conversely, it is error for the prosecutor to suggest that a 'reasonable' account of the evidence *satisfies the prosecutor's burden of proof.* In *State v. Sappington* (2007) 285 Kan. 176, the prosecutor told the jurors that they were not required to ' "know beyond any doubt" ' that the defendant was guilty and explained: ' "Remember our test is beyond a reasonable doubt. *And is it reasonable given that evidence that we have that [the defendant ] is the one that did this? And I suggest to you the answer is, yes, it is.*" ' [Citation.] The Kansas Supreme Court concluded that the prosecutor misstated the burden of proof: 'To convict a defendant of a crime, the jury must find that it has no reasonable doubt as to the truth of each claim the State must prove. [Citation.] Yet, as [defendant] argues, his prosecutor's statement suggests that a jury may convict if the jury believes that it is merely "reasonable" that he committed the crime. We conclude that this misstatement dilutes the State's burden because a jury could convict due to its reasonable belief that a defendant committed a crime while still having a reasonable doubt as to guilt.' [Citation.]

"It is likewise error to state that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.' [Citations.] It is, and remains, the prosecutor's burden to prove the case. If the defense chooses to produce evidence, the jury must, of course, consider it as part of the complete record before it. To that end, the prosecution can surely point out that interpretations proffered by the defense are neither reasonable nor credible. Nevertheless, even if the jury rejects the defense evidence as unreasonable or unbelievable, that conclusion does not relieve or mitigate the prosecutorial burden. The prosecution cannot suggest that deficiencies in the defense case can make up for shortcomings in its own. In [*People v.*] *Ellison* [ (2011) 196 Cal.App.4th 1342], for example, the prosecutor made several arguments to the effect that ' "you have to look at whether or not it's reasonable or unreasonable for the defendant to be innocent," ' and to vote not guilty if ' "it's reasonable that the defendant is innocent...." ' [Citation.] The appellate court concluded that 'the prosecutor improperly attempted to lessen the People's burden of proof by arguing to the jury that the beyond-a-reasonable-doubt standard required the jury to determine whether defendant's innocence was reasonable.' [Citation.]

"Here, the prosecutor did not simply urge the jury to ' "accept the reasonable and

reject the unreasonable" ' in evaluating the evidence before it. [Citation.] Rather, she confounded the concept of rejecting unreasonable inferences, with the standard of proof beyond a reasonable doubt. She repeatedly suggested that the jury could *find defendant guilty* based on a 'reasonable' account of the evidence. These remarks clearly diluted the People's burden.

"It is reasonably likely that the prosecutor's hypothetical and accompanying argument misled the jury about the applicable standard of proof and how the jury should approach its task." (*Centeno, supra,* 60 Cal.4th at pp. 671–674.)

When the entirety of the Supreme Court's discussion is considered, it is apparent that *Centeno* condemns the argument by the prosecution, which, either intentionally or unintentionally, attempts to lighten the prosecutor's burden of proof to something less than beyond a reasonable doubt by suggesting the jury need only conclude that a reasonable interpretation of the evidence is sufficient to find a defendant guilty. As we shall explain, the prosecutor in this case did not argue that the burden of proof should be any standard other than beyond a reasonable doubt.

As stated above, defense counsel admitted the house belonged to Anderson and the bedroom in which the drugs were found was Anderson's room. The prosecutor began his rebuttal argument by noting the defense rested almost entirely on the assertion that Anderson was not at home when the police searched his house. He then noted that Anderson's witness to his fact, Turner, was not believable. The prosecutor continued:

"And then what do you have left? Well, you have that circumstantial evidence that is from—is evidence of another fact or group of facts from which you may logically and reasonably conclude the truth of the fact in question.

"Now, *here is a much more reasonable scenario.* I remember, years and years ago, when I was a little kid, I was really into ships. And I remember reading about stories about weird ship things. And there was one—this one ship, called it the Marie Celeste. They found it floating in the middle of the ocean, and the plates were still on the table. Literally, not a person on the boat. These people just—had just vanished off that boat, and the plates were still on the table.

"Look at this house. Kind of reminds me of that story, because when the police get there, the T.V. is on, and that T.V. would tell anybody sitting in that room who is coming up the drive. His wallet—his wallet with his only I.D. is sitting right there. [Defense counsel] has, over and over again—'Why would they—people be there? Why would a guy who has a drug history show up with 30 bucks [in his pocket]?' I wonder why.

"Well, a very logical inference from that set of facts is, that he's there, he's got the T.V. on, place is open for business. *That is every bit as reasonable of an interpretation.*

"If you look at this land, if he's the one that knows, because these other people are just sitting in the living room—I don't know what they're doing. And I would submit to you, I had to bring in Miss Hunter and this other guy because you'd be asking, 'What about these people?' So you get who you can and you bring them in. She can't even get her story straight. There is only three people? One person says there is five people. Who knows? Who knows if they're all there to buy drugs?

> "But that back door, just like the detective said, that back door goes into the woods. So how long would it take him, in his bedroom with the video on, his room, mind you, with the video on, to go out that door and be gone, gone, gone? Not very long." (Italics added.)
>
> The two italicized portions of the above quote are the sections of the closing argument to which Anderson refers. We have quoted the entire portion of this argument to establish that Anderson's argument relies on taking the prosecutor's statements out of context. It is readily apparent the prosecutor was arguing that a *reasonable interpretation of the circumstantial evidence* was that Anderson was home when the police arrived, but escaped into the woods when he saw the police on the monitor. Indeed, the jury had been instructed that, "when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." (CALCRIM No. 224.) It also is readily apparent the prosecutor was not arguing that Anderson should be found guilty simply because the prosecutor's interpretation of the evidence was reasonable. The prosecutor did not err in making this argument to the jury.

Anderson, 2016 WL 778168, at *3–6.

To the extent Petitioner challenges the state court's <u>Centeno</u> determination, such a claim is not cognizable in federal habeas. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). To the extent Petitioner raises a federal due process claim, the Court finds that Petitioner is not entitled to federal habeas relief for the reasons set forth below.

In <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986), the Supreme Court held that a prosecutor's improper comments violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181 (internal quotation marks omitted) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)). <u>See</u> <u>Parker v. Matthews</u>, 567 U.S. 37, 45 (2012) (finding <u>Darden</u> to be the clearly established federal law relevant to prosecutor's improper comments). As "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power,'" it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." <u>Darden</u>, 477 U.S. at 181 (citations omitted). In order to make a determination, the Court is to consider the comment in the context of the entire trial. <u>Hein v. Sullivan</u>, 601 F.3d 897, 913 (9th Cir. 2010) (citing <u>Darden</u>, 477 U.S. at 182).

"The government's closing argument is that moment in the trial when a prosecutor is compelled to reveal her own understanding of the case as part of her effort to guide the jury's

comprehension." <u>Gautt v. Lewis</u>, 489 F.3d 993, 1013 (9th Cir. 2007). "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." <u>Ceja v. Stewart</u>, 97 F.3d 1246, 1253–54 (9th Cir. 1996) (internal quotation marks omitted) (quoting <u>United States v. Baker</u>, 10 F.3d 1374, 1415 (9th Cir. 1993)). Considered in context, the prosecutor was not arguing that the jury could find Petitioner guilty because the prosecutor's interpretation of the evidence was reasonable. Rather, the prosecutor communicated his own understanding of the case and argued why his interpretation of the circumstantial evidence was more reasonable than the defense's interpretation. As noted by the California Court of Appeal, the jury was instructed that "when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable." (CT 155; 5 RT 915). Moreover, prior to closing argument the jury was instructed: "Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case. Their remarks are not evidence." (2 RT 355).

The state court's conclusion that the prosecutor did not err in arguing that a reasonable interpretation of the circumstantial evidence was that Petitioner was home when the police arrived and escaped into the woods when he saw the police on the monitor was not objectively unreasonable. The prosecutor's comments did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden</u>, 477 U.S. at 181 (internal quotation marks omitted) (quoting <u>Donnelly</u>, 416 U.S. at 643). The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law,[6] nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his second claim.

---

[6] Although the California Court of Appeal did not cite to any federal authority on this issue, the pertinent inquiry is whether it "reasonably applied the principles contained in relevant Supreme Court precedent." <u>Parker v. Small</u>, 665 F.3d 1143, 1148 n.1 (9th Cir. 2011) (citing <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)). The Supreme Court has noted that a state court is not required to cite or even be aware of its cases under § 2254(d). <u>Early</u>, 537 U.S. at 8.

### C. Ineffective Assistance of Counsel

In his third claim for relief, Petitioner asserts that his trial counsel was ineffective for failing to object to both the Griffin error and the prosecutorial misconduct regarding the burden of proof. (ECF No. 1 at 10, 21). Respondent argues that the state court's rejection of this claim was reasonable. (ECF No. 12 at 27).

Petitioner's ineffective assistance of counsel claim was raised in a state habeas petition in the California Court of Appeal, Fifth Appellate District. (LD 12). In the order denying the petition, the California Court of Appeal took judicial notice of its opinion in Petitioner's direct appeal. (LD 15). The California Supreme Court summarily denied Petitioner's petition for review. (LDs 16, 17). As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

The clearly established federal law governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668 (1984). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland, 466 U.S. at 687. First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Richter, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (citing Strickland, 466 U.S. at 690). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687. A reviewing court should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time." Id. at 689.

Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court "asks whether it is 'reasonable likely' the result would have been different. . . . The likelihood of a different result must be substantial, not just conceivable." Richter, 562 U.S. at 111–12 (citing Strickland, 466 U.S. at 696, 693). A reviewing court may review the prejudice prong first. See Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002).

When § 2254(d) applies, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Richter, 562 U.S. at 101. Moreover, because Strickland articulates "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). Thus, "for claims of ineffective assistance of counsel . . . AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting Burt v. Titlow, 571 U.S. 12, 13 (2013)). When this "doubly deferential" judicial review applies, the inquiry is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

As discussed in sections IV(A) and IV(B), *supra*, the state court reasonably rejected Petitioner's Griffin error and prosecutorial misconduct claims. Therefore, defense counsel was not ineffective in failing to object to the prosecutor's comments that formed the basis for said claims. See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (finding that "trial counsel cannot have been ineffective for failing to raise a meritless objection").

Under AEDPA's "doubly deferential" review of ineffective assistance of counsel claims, Donald, 135 S. Ct. at 1376, the Court finds that the state court's decision denying Petitioner's

1    ineffective assistance claim was not contrary to, or an unreasonable application of, clearly

2    established federal law. The decision was not "so lacking in justification that there was an error

3    well understood and comprehended in existing law beyond any possibility for fairminded

4    disagreement." <u>Richter</u>, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief

5    for his third claim for relief, and it should be denied.

6        **D.  Cumulative Error**

7        In his fourth claim for relief, Petitioner asserts that cumulative errors denied him a fair

8    trial, in violation of the Fourteenth Amendment. (ECF No. 1 at 10, 25–26). Respondent argues

9    that as the state court reasonably rejected Petitioner's individual claims of error, Petitioner's

10   cumulative error claim likewise fails. (ECF No. 12 at 28–29).

11       The cumulative error claim was raised in Petitioner's petitions for review. (LDs 10, 16).

12   The California Supreme Court summarily denied the petitions for review, (LDs 11, 17), and

13   there is no reasoned state court decision on this claim. The Court presumes that the state court

14   adjudicated the claim on the merits. <u>See</u> <u>Johnson</u>, 568 U.S. at 301. Accordingly, AEDPA's

15   deferential standard of review applies, and the Court "must determine what arguments or theories

16   ... could have supported, the state court's decision; and then it must ask whether it is possible

17   fairminded jurists could disagree that those arguments or theories are inconsistent with the

18   holding in a prior decision of [the Supreme] Court." <u>Richter</u>, 562 U.S. at 102.

19       "The Supreme Court has clearly established that the combined effect of multiple trial

20   court errors violates due process where it renders the resulting criminal trial fundamentally

21   unfair. . . . even where no single error rises to the level of a constitutional violation or would

22   independently warrant reversal." <u>Parle v. Runnels</u>, 505 F.3d 922, 927 (9th Cir. 2007) (citing

23   <u>Chambers v. Mississippi</u>, 410 U.S. 284, 298, 302–03, 290 n.3 (1973)). The Ninth Circuit has

24   "granted habeas relief under the cumulative effects doctrine when there is a 'unique symmetry'

25   of otherwise harmless errors, such that they amplify each other in relation to a key contested

26   issue in the case." <u>Ybarra v. McDaniel</u>, 656 F.3d 984, 1001 (9th Cir. 2011) (citing <u>Parle</u>, 505

27   F.3d at 933). For example, in <u>Parle</u>, "*all* of the improperly excluded evidence . . . supported

28   Parle's defense that he lacked the requisite state of mind for first-degree murder; at the same

time, *all* of the erroneously admitted evidence . . . undermined Parle's defense and credibility and bolstered the State's case." Parle, 505 F.3d at 930.

As discussed above, the Court has found that the state court reasonably rejected Petitioner's claims of error, and thus, there was no error to cumulate. The state court's denial of the cumulative error claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

### E.  Certificate of Appealability

Having found that Petitioner is not entitled to habeas relief, the Court now turns to the question of whether a certificate of appealability should issue. See Rule 11, Rules Governing Section 2254 Cases. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the

denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition on the merits, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner's federal habeas corpus petition should be denied debatable or wrong, or that the issues presented are deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Therefore, the Court declines to issue a certificate of appealability.

## V.

## ORDER

Accordingly, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is DIRECTED to CLOSE the case; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:  __**April 4, 2018**__

_____
UNITED STATES MAGISTRATE JUDGE